IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JARDON BOUSKA,

               Plaintiff,

    v.

FISERV, INC.,

               Defendant.

CIVIL ACTION FILE NO.

1:14-CV-01684-JFK

## **WRITTEN OPINION AND ORDER**

On May 1, 2014, Plaintiff Jardon Bouska filed a complaint in the Superior Court of Fulton County against Defendant Fiserv, Inc., seeking damages for an alleged breach of contract or, in the alternative, under the doctrine of promissory estoppel and for intentional and negligent misrepresentation. [Doc. 1-1 ("Complaint")]. On June 2, 2014, Defendant removed the case to this court. [Doc. 1]. In lieu of filing an answer, on June 23, 2014, Defendant filed a motion to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. [Doc. 4]. And on July 21, 2014, Plaintiff filed a response to the motion to dismiss [Doc. 7] and a motion for partial summary judgment as to Count One of the Complaint which alleges a breach of contract. [Doc. 6]. On August 1, 2014, in lieu of filing a response to the motion for partial summary judgment, Defendant filed a motion for

discovery, pursuant to Fed. R. Civ. P. 56(d). [Doc. 12]. Plaintiff opposes Defendant's

Rule 56(d) motion. [Doc. 16]. The parties have consented to proceed before the

undersigned Magistrate Judge. [Doc. 11].

## I.     The Complaint

The Complaint alleges that in 2007, Plaintiff and Checkfree Corporation entered

into a Retention Agreement because of the anticipated sale to Defendant Fiserv, Inc.,

and that Defendant assumed the obligations under the contract when it purchased the

business. [Complaint ¶¶ 6-10]. The contract provided that Plaintiff could terminate

his employment for "Good Reason," as defined in section 6(c), upon written notice as

provided for in the contract (see sections 1(b) and 6(d)), and that, upon compliance

with these contract terms, Defendant would pay Plaintiff a severance package as

outlined in the contract, section 7. [Id. ¶¶ 11-12, Exhibit 1 ("Retention Agreement")].

The Complaint alleges that, in February 2014, Defendant notified Plaintiff of changes

in the terms of his employment which fell within the "Good Reason" provisions of the

contract, that Plaintiff notified Defendant as required under the terms of the contract,

and that Defendant declined to correct or reverse the change in terms of Plaintiff's

employment and, instead, terminated Plaintiff's employment. [Id. ¶¶ 13-16, Exhibits

3-4].

2

Count One of the Complaint alleges that Defendant breached the terms of the contract by failing to pay Plaintiff as required under the terms of section 7 of the Retention Agreement, noting that Defendant's reliance on the Amendment to the Retention Agreement, which is not supported by consideration, is misplaced because the Amendment does not alter Defendant's contract obligations. [Id. ¶¶ 18-24, Exhibit 2 ("Amendment")].  Count Two asserts a cause of action under the doctrine of promissory estoppel contending that, pursuant to the Retention Agreement, Defendant promised to pay Plaintiff severance benefits if any action constituting "Good Reason" occurred which was not limited by any time period, that Defendant should have reasonably expected Plaintiff to rely on that promise to continue his employment, that Plaintiff did continue his employment, and that Defendant must be forced to comply with the promise to pay the severance benefits or Plaintiff will suffer a grave injustice. [Id. ¶¶ 25-32].  And in Count Three, the Complaint alleges intentional and negligent misrepresentation based on the wording of the Amendment in which "Defendant stated that the Amendment was intended to clarify the circumstances under which 'Good Reason' could be invoked pursuant to section 6(c)(iii)" (inferring that the language did not include the other "Good Reason" clauses) of the Retention Agreement and based on the representations of Defendant in regard to the Amendment.  The Complaint

3

asserts that Defendant now contends that the Amendment, for which no consideration was provided, limits the time period during which Plaintiff could receive severance benefits for any of the reasons listed in section 6(c) of the Retention Agreement. Accordingly, Defendant intentionally or negligently misrepresented the purpose of the Amendment knowing that Plaintiff would rely on those misrepresentations. [Id. ¶¶ 33-43]. And Plaintiff seeks attorney's fees and expenses pursuant to state law and the terms of the Retention Agreement. [Id. ¶¶ 44-46].

## III.   Standard of Law

On a motion to dismiss under Rule 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff. Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County School Dist., 446 F.3d 1153, 1156 (11th Cir. 2006). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). The Federal Rules of Civil Procedure[1] include no requirement that a plaintiff detail the facts upon which the plaintiff bases a claim. Rule

---

[1]The Federal Rules of Civil Procedure apply to an action after removal. See Fed. R. Civ. P. 81(c)(1). "[R]epleading is not necessary unless the court orders it." Id. at 81(c)(2).

4

8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (as amended 2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted); accord Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations and internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level[,]" i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 127 S. Ct. at 1965 (citations omitted) (emphasis omitted).  "Stated differently, the

5

factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief[.]'" <u>Stephens</u>, 500 F.3d at 1282 (quoting <u>Twombly</u>, 127 S. Ct. at 1966-67).

The court's inquiry at this stage of the proceedings focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted). And a court reviewing a motion to dismiss must keep in mind that a "motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case." <u>Wein v. American Huts, Inc.</u>, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004) (citing <u>Milburn v. United States</u>, 734 F.2d 762, 765 (11th Cir. 1984)). "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law." <u>Bernard v. Calejo</u>, 17 F. Supp. 2d 1311, 1314 (S.D. Fla. 1998) (citing <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint . . . when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.")); <u>see also</u> <u>Glover v. Liggett Group, Inc.</u>, 459 F.3d 1304,

6

1308 (11th Cir. 2006) (same); Aque v. Home Depot U.S.A., Inc., 629 F. Supp. 2d 1336, 1350 (N.D. Ga. 2009).

The court will apply these standards in ruling on the motion to dismiss.

## III.   Contentions of the Parties

Defendant moves to the dismiss all counts in the Complaint asserting that, applying Delaware law as specified in the Retention Agreement, the agreement as modified by the Amendment places temporal limitations on Plaintiff's right to terminate his employment for "Good Reason" under all of the subsections of section 6(c) and to, accordingly, receive severance benefits. [Doc. 4]. Defendant contends that the Plaintiff's right to terminate for "Good Reason" pursuant to clauses 6(c)(i), (ii), (iv), (v) and (vi) of the modified Retention Agreement fell between the dates of December 3, 2007, and June 3, 2009, and pursuant to clause 6(c)(iii) of the modified Retention Agreement fell between the dates of December 3, 2007, and June 3, 2010. [Doc. 4 at 6]. In support of this argument, Defendant relies on the following language in the Amendment which states that "[t]he first sentence in Section 6(c)[2] shall be amended in its entirety to read as follows:

---

[2]This sentence reads in the unamended Retention Agreement as follows: "(c) Good Reason. Executive's employment may be terminated by Executive for Good Reason." [Retention Agreement § 6(c)].

7

> Executive's employment may be terminated by Executive during the Employment Period for Good Reason; provided however, that in the event the Change in Control Date occurs by reason of the Effective Time (as defined in the Merger Agreement), Executive's employment may be terminated for Good Reason during the eighteen (18) month period following the Effective Time, in respect of clauses (i), (ii), (iv), (v) and (vi) below, and during the thirty (30) month period following the Effective Time, in respect of clause (iii) below, and, in each case, be entitled to the benefits under Section 7(a), notwithstanding any earlier termination of the Employment Period."

[Amendment ¶ 2].[3]  Defendant contends, therefore, that Plaintiff's 2014 written notice of intent to terminate his employment for "Good Reason" pursuant to the Retention Agreement is not timely and that Defendant was under no obligation to pay severance benefits as specified in section 7 of the agreement.  [Doc. 4 at 7, 11-12].[4]  Defendant contends that, as a matter of law, the court should find that there was no breach of the amended Retention Agreement.  [Id. at 8-12].

Defendant further argues that Plaintiff's promissory estoppel claim fails, under Georgia law, because Plaintiff is seeking to recover on the underlying contract, that is, the Retention Agreement, and that, due to this reliance, Plaintiff may not plead

---

[3]Apparently, there is no disagreement about the time periods identified by Defendant if this section amends the Retention Agreement as argued by Defendant. [Doc. 7].

[4]Defendant does not argue that the written notice in any other manner failed to comply with the terms of the Retention Agreement as amended.  [Doc. 4].

8

promissory estoppel even as an alternative means of relief.  [Id. at 13-15].  And Defendant argues that Plaintiff's claim of intentional or negligent misrepresentation also fails because he has sought to enforce - not rescind - the Retention Agreement which contains a merger clause.  For that reason, Plaintiff's claim that Defendant misrepresented the purpose of the Amendment by making statements or other promises not contained in the contract must fail as not being in writing.  The clause relied on by Defendant states:  "(c)   Amendments.  This Agreement may not be amended or modified otherwise than by a written agreement executed by the parties hereto or their respective successors and legal representatives."  [Retention Agreement § 14(c)]. Defendant further argues that Plaintiff cannot establish a claim of misrepresentation based on the language in the Amendment's recitals as alleged in the Complaint and that any alleged reliance thereon under the circumstances is not justifiable.  [Doc. 4 at 16-20].[5]

---

[5]The court notes that Defendant's reference to the recital at issue and quotation thereof in Defendant's brief to support this argument omits language that arguably circumscribes the scope of at least the "parties['] desire" in entering the Amendment. Defendant quotes the recital as stating:  "WHEREAS, the parties desire to enter into this Agreement to revise the terms of the Agreement to clarify the circumstances under which the Executive may terminate employment for 'Good Reason' (as defined in the Agreement) . . . ."  [Doc. 4 at 19 (quoting Amendment)].  The omitted language, following the parenthetical, states: ". . . pursuant to Section 6(c)(iii) of the Agreement . . . ."  [Amendment].  This portion of the recital read in its entirety provides:  ". . . to

9

In addition to filing a response to the motion to dismiss, Plaintiff filed a motion for partial summary judgment on the breach of contract claim in Count One of the Complaint.  [Docs. 6 and 7].  Plaintiff, in agreement with Defendant, relied on Delaware law and argues as a matter of law that the court should decide the issue of breach of contract.  [Id. at 13].  And Plaintiff contends that Defendant's motion to dismiss the claims of promissory estoppel and intentional or negligent misrepresentation should be denied because Plaintiff has stated causes of action upon which relief may be granted.  [Id. at 28-40].

Plaintiff's argument in support the partial motion for summary judgment on the breach of contract claim and in opposition to Defendant's motion to dismiss that claim relies on interpretation of the Retention Agreement as originally entered by the parties. [Doc. 7 at 12-19].  As Plaintiff points out, the Retention Agreement did not impose time limits on payment of severance benefits unless Defendant provided notice that the protections would not be extended.  [Retention Agreement § 1(b)].  Plaintiff also pointed out that the term "Good Reason" was specifically defined in section 6(c) of the Retention Agreement and that, if that definition is satisfied and if he provides notice

---

revise the terms of the Agreement to clarify the circumstances under which the Executive may terminate employment for 'Good Reason' (as defined in the Agreement) pursuant to Section 6(c)(iii) of the Agreement . . . ."  [Id.].

10

as required in the Retention Agreement, then the severance benefits of paragraph 7 are triggered. [Doc. 7 at 15-16 (citing Retention Agreement §§ 6(c), 7)]. Plaintiff argues that, although he fully complied with the requirements of the Retention Agreement, Defendant denied payment of his severance benefits causing him damages. [Id. at 18-19].

Plaintiff next argues that the Amendment to the Retention Agreement is not effective due to lack of consideration supporting the modification. [Doc. 19 at 23]. However, even if the Amendment is enforceable, Plaintiff asserts that the language therein does not impose the time limits asserted by Defendant and contends that the language of the Amendment is ambiguous. In construing the Amendment, Plaintiff relies heavily on the phrasing, previously noted, in the recital about the "parties desire" for entering the Amendment as limiting the impact of the Amendment to the "Good Reason" provision in section 6(c)(iii) and only preventing invocation of that subsection for the first year after Defendant acquired the business. [Doc. 7 at 23-24]. In support of this argument negating the language of paragraph 2, Plaintiff relies on the last sentence of paragraph 3 of the Amendment:

> No provision of this paragraph shall modify Executive's right to resign
> for Good Reason by virtue of any of the events or circumstances
> described in Section 6(c)(i), (ii), (iv), (v) or (vi), or, following the first

AO 72A
(Rev.8/82)

> anniversary of the Effective Time, to resign for Good Reason by virtue
> of any of the events or circumstances in Section 6(c)(iii) (disregarding the
> provisions of this paragraph).

[Id. at 8, 24-25 (quoting Amendment ¶ 3)].[6]  And finally Plaintiff argues that the

Amendment did not modify the terms of section 7 of the Retention Agreement by

limiting the time period during which Plaintiff could exercise his rights to receive

severance benefits and that, if the parties had so intended, the Amendment would have

specifically addressed that section.  [Id. at 25-28].

As to his claims for relief based on promissory estoppel and intentional and

negligent misrepresentation, Plaintiff argues that he has stated claims upon which relief

may be granted and that dismissal is not appropriate even if obtaining relief is unlikely.

Plaintiff argues that Georgia law, which controls the resolution of these two state law

claims, allows for pleading causes of action for promissory estoppel and

misrepresentation in the alternative as does Fed. R. Civ. P. 8.  [Doc. 7 at 29-40].

Plaintiff contends that, contrary to Defendant's arguments, he has sought to rescind the

Amendment to the Retention Agreement, that neither the Retention Agreement or

---

[6]Plaintiff's argument, as was true with Defendant's omissions from the Amendment's recital, fails to quote paragraph 3 of the Amendment in full, instead taking the final sentence thereof out of context.  [See Doc. 14, Exhibit A].

Amendment contain a merger clause as defined by courts in Georgia, and that he is entitled to present evidence to support his causes of action. [Id.].

In reply and in support of the motion to dismiss the complaint, Defendant points out that the Amendment to the Retention Agreement is based upon mutual consideration, to wit: (1) paragraph 1 of the Amendment provides for additional accelerated vesting events in Plaintiff's favor not provided in the Retention Agreement, see section 3; (2) paragraph 3, second sentence, of the Amendment provides for a waiver of the 90-day notice period during the first year after a change of ownership not provided in the Retention Agreement, see section 6; and (3) paragraph 4 of the Amendment adds section 13(c) to the Retention Agreement and provides for payment of interest to Plaintiff on certain payments not promised in the Retention Agreement, see section 13. [Doc. 15 at 5-6, 11 n.6]. Defendant also asserts that the Amendment is not ambiguous because Plaintiff's reliance on the recital is misplaced, that section 7 is dependent on Plaintiff's timely notification of "Good reason" as defined in the amended section 6(c), and that paragraph 3 of the Amendment does not negate paragraph 2 but deals solely with a resignation for good cause during the one-year period after Defendant acquired the business. [Id. at 6-13]. Defendant renews the arguments that Plaintiff cannot rely promissory estoppel or intentional or negligent

13

misrepresentation for relief in light of the terms of the Retention Agreement and the Amendment.  [Id. at 13-15].

In lieu of responding to the motion for partial summary judgment, Defendant filed a motion pursuant to Fed. R. Civ. P. 56(d) seeking discovery on the breach of contract claim, if the court does not dismiss the claim.  [Doc. 12].  Plaintiff opposes that motion [Doc. 16], and Defendant has replied in support [Doc. 17].  However, because the court finds that Defendant's motion to dismiss the breach of contract claim should be granted, Plaintiff's motion for partial summary judgment on that count will be denied and Defendant's motion for discovery is moot.

## IV.   Discussion

### a.      Breach of Contract Claim, Count One

The court agrees with the parties that, in accordance with the choice of law provision of the Retention Agreement, see section 14(a), Delaware law controls construction of the contract and resolution of the motion to dismiss Count One and Plaintiff's motion for partial summary judgment and that construction of the Retention Agreement and the Amendment are a matter of law for the court.  [Doc. 4 at 8-10; Doc. 7 at 13].  "Under Delaware law, the interpretation of contract language is a question of law."  Frank and Assoc., LLP v. U.S. Bank Nat'l Assoc., 722 F. Supp. 2d 496, 500

14

(D. Del. 2010); and see Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co., 616 A.2d 1192, 1195 (1992) (same).  Extrinsic evidence may not be used to interpret "'clear and unambiguous language[,]'" and "[a] contract is not rendered ambiguous simply because the parties do not agree upon its proper construction." Frank and Assoc., 722 F. Supp. 2d at 501 (citations omitted); and see Rhone-Poulenc, 616 A.2d at 1195 ("Absent some ambiguity, Delaware courts will not destroy or twist [contract] language under the guise of construing it.").

"[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." Frank and Assoc., 722 F. Supp. 2d at 501.  "Ambiguity does not exist where the court can determine the meaning of a contract 'without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends. . . .  The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." Rhone-Poulenc, 616 A.2d at 1196; and see Frank and Assoc., 722 F. Supp. 2d at 501 ("unambiguous contract language must be construed in accordance with how it would be understood by 'an objective reasonable third party'") (citation omitted).

When interpreting the language in a contract and determining the intention of the parties, the "contract must be construed as a whole, giving effect to all of its provisions and avoiding a construction which would render any of those provisions illusory or meaningless." Seabreak Homeowners Assoc., Inc. v. Gresser, 517 A.2d 263, 269 (1986); and see E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co., 498 A.2d 1108, 1113 (1985) ("In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein."). "Moreover, the meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan." E.I. du Pont de Nemours, 498 A.2d at 1113.

The court finds that the Amendment to the Retention Agreement is supported by consideration independent of the consideration underlying the original agreement. "[C]onsideration for a contract can consist of either a benefit to the promiser or a detriment to the promisee." First Mortg. Co. of Pennsylvania v. Federal Leasing Corp., 456 A.2d 794, 795-96 (1982). The same is true for an agreement to modify a contract. JBR Contractors, Inc. v. E & W, LLC, 991 A.2d 18, 2010 WL 802076, at *1 n.4 (Del. Supr. March 9, 2010). Although Plaintiff contends that no new consideration supported the Amendment [Doc. 7 at 19-23], Defendant has pointed out at least three

16

new benefits to Plaintiff, and detriments to Defendant, not contained in the Retention Agreement that establish consideration for Plaintiff's entry into the Amendment: (1) paragraph 1 of the Amendment provides for additional accelerated vesting events in Plaintiff's favor not provided in the Retention Agreement, see section 3; (2) paragraph 3, second sentence, of the Amendment provides for a waiver of the 90-day notice period during the first year after a change of ownership not provided in the Retention Agreement, see section 6; and (3) paragraph 4 of the Amendment adds section 13(c) to the Retention Agreement and provides for payment of interest to Plaintiff on certain payments not promised in the Retention Agreement, see section 13. [Doc. 15 at 5-6, 11 n.6]. Accordingly, the Amendment is based on consideration and modifies the Retention Agreement.

Likewise, Plaintiff's arguments that the amended agreement is ambiguous or that the language therein does not support Defendant's interpretation imposing temporal restrictions on the "Good Reason" provisions of section 6(c) are not persuasive. Plaintiff's contentions are based on parsing the provisions of the Amendment, misreading the unambiguous language of the Amendment, and failing to construe the Amendment as a whole and to give full effect to all of the provisions of the amended

17

Retention Agreement.  Plaintiff's reliance on the language in the recital to support his arguments is misplaced.

Plaintiff points to language in the recitals to contend that the Amendment was not intended by the parties to temporally restrict a "Good Reason" termination and thereby limit payment of severance benefits.  [Doc. 7 at 24-27].  The recital provides:

> WHEREAS, the *parties desire* to enter into this Agreement to revise the terms of the Agreement to clarify the circumstances under which the Executive may terminate employment for 'Good Reason' (as defined in the Agreement) pursuant to Section 6(c)(iii) of the Agreement and to modify the terms of certain equity compensation awards. . . .

[Amendment (emphasis added)].  Although the recital does not (as Defendant notes) state that the intent of the Amendment was to *only* clarify the circumstances under which "Good Reason" in section 6(c)(iii) could be invoked, Plaintiff correctly notes - as may be relevant to the alternative state law claims of promissory estoppel and misrepresentation - that the recital also does not indicate that the parties affirmatively desired to clarify the other "Good Reason" clauses of section 6(c).  [Doc. 7 at 24; Doc. 14 at 8].

However, because the court finds that the remaining language of the Amendment is not ambiguous, Plaintiff may not rely on the recital in support of the motion for partial summary judgment or to oppose Defendant's motion to dismiss.

18

"One rule of contract interpretation is that 'Recitals are not a necessary part of a contract and can only be used to explain some apparent doubt with respect to the intended meaning of the operative or granting part of the instrument. . . .' This rule is an application of the general principles of contractual interpretation: '[S]pecific terms and exact terms are given greater weight than general language.'" Coca-Cola Bottling Co. of Elizabethtown, Inc. v. The Coca-Cola Co., 654 F. Supp. 1419, 1441-42 (D. Del. 1987) (citations omitted); and see New Castle County v. Crescenzo, 1985 WL 21130, at *3 (Del. Ch. February 11, 1985) ("Generally, recitals are not a necessary part of a contract and can only be used to explain some apparent doubt with respect to the intended meaning of the operative or granting part of the instrument."); Mercantile-Safe Deposit and Trust Co. v. Inproject Corp., 1984 WL 19483, at *2 (Del. Ch. October 12, 1984) (same). "If recitals are inconsistent with the operative or granting part [of a contract], the latter controls." New Castle County, 1985 WL 21130, at *3; see also Haft v. Dart Group Corp., 841 F. Supp. 549, 575 n.37 (D. Del. 1993) ("if [recitals are] inconsistent with clear and definite language in the granting part [of the contract] the latter will prevail") (citation and internal quotation marks omitted). As discussed *infra*, the operative and granting parts of the Amendment are clear, contain definite language and control the interpretation of the Amendment.

19

Paragraph 2 of the Amendment states that "[t]he first sentence in Section 6(c)[of the Retention Agreement[7]] shall be amended in its entirety to read as follows:

> Executive's employment may be terminated by Executive during the Employment Period for Good Reason; provided however, that in the event the Change in Control Date occurs by reason of the Effective Time (as defined in the Merger Agreement), Executive's employment may be terminated for Good Reason during the eighteen (18) month period following the Effective Time, in respect of clauses (i), (ii), (iv), (v) and (vi) below, and during the thirty (30) month period following the Effective Time, in respect of clause (iii) below, and, in each case, be entitled to the benefits under Section 7(a), notwithstanding any earlier termination of the Employment Period."

[Amendment ¶ 2].[8] This provision specifically sets temporal restrictions on Plaintiff's invocation of the "Good Reason" provisions of section 6(c) in order to receive severance benefits pursuant to section 7. According to this language, in order to "be entitled to the benefits under Section 7(a)," Plaintiff had to give notice of "Good Reason" "in respect of clauses (i), (ii), (iv), (v) and (vi)" between the dates of December 3, 2007, and June 3, 2009, and "in respect of clause (iii)" between the dates of December 3, 2007, and June 3, 2010. [Doc. 4 at 4-6; Amendment]. Paragraph 2 of

---

[7]This sentence reads in the unamended Retention Agreement as follows: "(c) <u>Good Reason</u>. Executive's employment may be terminated by Executive for Good Reason." [Retention Agreement § 6(c)].

[8]When included in the Retention Agreement, following this modified language are clauses (i) through (vi) which further define "Good Reason." [<u>See</u> Doc. 14, Exhibit A].

20

the Amendment redefines the term "Good Reason" by placing temporal restrictions on Plaintiff's ability to invoke section 6(c) in order to receive the severance benefits separately explained in section 7.

Contrary to Plaintiff's contention, section 7 does not define "Good Reason" or set the parameters for Plaintiff's entitlement to the severance benefits.  Section 7, instead, explains the benefits to which Plaintiff is entitled *if* "Good Reason" is established and Plaintiff otherwise complies with the terms of the modified Retention Agreement.  The language of section 7 does not conflict with the language of paragraph 2 of the Amendment.  The fact that section 7 does not otherwise place temporal restrictions on "Good Reason" is irrelevant.[9]  The allegations in the Complaint are in accord with this understanding of the how the various sections of the Retention Agreement are interpreted:  The contract provided that Plaintiff could terminate his employment for "Good Reason," as defined in section 6(c), upon written notice as provided for in the contract (see sections 1(b) and 6(d)), and that, upon compliance with these contract terms, Defendant would pay Plaintiff a severance

---

[9]Plaintiff, in fact, acknowledges that the "evergreen protections" provided for in the Retention Agreement, see section 1(b), could be modified upon notice by Defendant.  [Doc. 7 at 15].  While he contends that no such notice was given, the executed Amendment to the Retention Agreement contains a notification in paragraph 2 of changes to those protections.

21

package as outlined in the contract, section 7.   [Complaint ¶¶ 11-12; Retention Agreement].

Finally, paragraph 3 of the Amendment does alter the interpretation of paragraph 2.  Plaintiff's arguments to the contrary are not persuasive.  Plaintiff's reliance, taken out of context, on the final sentence of paragraph 3 of the Amendment is misplaced.  That sentence provides:  "No provision of this paragraph shall modify Executive's right to resign for Good Reason by virtue of any of the events or circumstances described in Section 6(c)(i), (ii), (iv), (v) or (vi), or, following the first anniversary of the Effective Time, to resign for Good Reason by virtue of any of the events or circumstances described in Section 6(c)(iii) (disregarding the provisions of this paragraph)."  [Doc. 7 at 8, 25-26].

As Defendant points out, the sentences of paragraph 3 of the Amendment pertain to "Executive" - in this case, Plaintiff - resigning during the first year following Defendant's purchase of the business.  This language is placed at the end of the second paragraph in section 6(c) of the Retention Agreement which follows the list of clauses, 6(c)(i) through (c)(vi), set forth in the first paragraph of that section.  [Doc. 14 at 10-12; Exhibit A].  The reference in the sentence relied on by Plaintiff, "No provision in *this* paragraph . . .," refers not to the first paragraph of section 6(c), which begins with

22

"(c) <u>Good Reason</u>. Executive's employment . . ." as modified by paragraph 2 of the Amendment, but with the second paragraph of that section which begins with "Good Reason shall not include . . ." as modified by paragraph 3 of the Amendment. [<u>See</u> Doc. 14, Exhibit A]. And the basic rules of contract construction dictate a result contrary to Plaintiff's attempt to render meaningless paragraph 2 of the Amendment by focusing on the final sentence in paragraph 3 of the Amendment. The "contract must be construed as a whole, giving effect to all of its provisions and avoiding a construction which would render any of those provisions illusory or meaningless." <u>Seabreak Homeowners Assoc.</u>, 517 A.2d at 269; <u>and see</u> <u>E.I. du Pont de Nemours</u>, 498 A.2d at 1113 ("the meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan").

For all of these reasons, the court finds that the Amendment to the Retention Agreement was supported by new consideration, that Plaintiff's construction of the Amendment is not supported by the clear meaning and reasonable interpretation of the terms and language of the Amendment, as integrated into the Retention Agreement, and that, as modified, the Retention Agreement placed temporal restrictions on Plaintiff's invocation of "Good Reason" for his termination. Because Plaintiff gave

23

notice of "Good Reason" on February 28, 2014 [Doc. 7, Exhibit 5], which was approximately four to five years after the deadlines imposed by the modified Retention Agreement (that is, June 3, 2009, or June 3, 2010), the severance benefits set forth in section 7 were not triggered.  As a matter of law, Defendant did not breach the terms of the modified Retention Agreement.  Accordingly, the court **GRANTS** Defendant's motion [Doc. 4] to dismiss Count One of the Complaint and **DENIES** Plaintiff's partial motion [Doc. 6] for summary judgment.  Defendant's motion [Doc. 12] for relief pursuant to Rule 56(d) is **DENIED** as **MOOT**.

> **b.**     **Promissory Estoppel, Count Two**

Defendant seeks to dismiss Count Two of the Complaint which asserts a cause of action for promissory estoppel. [Doc. 4 at 13-16].  Defendant argues that, because Plaintiff has sought to enforce the Retention Agreement, he cannot recover equitable relief for promissory estoppel.  [Id.].  Plaintiff, however, contends that at this stage of the proceedings he may plead in the alternative and seek relief for promissory estoppel if Defendant is not found in breach of contract, that he has not sought to enforce the Amendment to the Retention Agreement, and that dismissal is not appropriate because he has adequately pled a cause of action.  [Doc. 7 at 29-34].  The court finds that

24

Plaintiff has properly pled promissory estoppel as an alternative claim and theory of recovery.

"Under Georgia law . . . an estoppel requires a showing that (1) the defendant made certain promises, (2) the defendant should have expected that the plaintiff[ ] would rely on such promises, and (3) the plaintiff[ ] did in fact rely on such promises to [his] detriment."  Akins v. Cagle Foods JV, LLC, 411 F.3d 1320, 1326 (11th Cir. 2005).  "The threshold requirement for a promissory estoppel claim is that there be some enforceable promise by the defendant. . . .  A 'promise' is 'a manifestation of an intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.'"  American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C., 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006) (citations omitted).  The allegations in Count Two state a cause of action for promissory estoppel, that is, that pursuant to the Retention Agreement, Defendant promised to pay severance benefits to Plaintiff, if any action constituting "Good Reason" occurred which was not limited by any time period, that Defendant should have reasonably expected Plaintiff to rely on that promise to continue his employment, that Plaintiff did continue his employment, and that Defendant must be forced to

AO 72A
(Rev.8/82)

comply with the promise to pay the severance benefits or Plaintiff will suffer a grave injustice.  [Complaint ¶¶ 25-32].

While Plaintiff cannot recover under both a breach of the original Retention Agreement and on the doctrine of promissory estoppel, under the circumstances of this case, the court finds that Plaintiff "can plead both a breach of contract claim and a promissory estoppel, in the alternative."  Ultrasound Imaging Corp. v. Hyatt Corp., 2009 WL 3029763, at *10 (N.D. Ga. September 22, 2009); and see American Casual Dining, 426 F. Supp. 2d at 1371 ("Rule 8 of the Federal Rules of Civil Procedure permits a party to plead alternative and inconsistent claims and theories of recovery. . . . Thus, a party is generally permitted to plead both promissory estoppel and breach of contract claims in the alternative.").  "Nevertheless, when the promise underlying the estoppel claim is the same promise that has been alleged to have been breached in the contract claim *and* when neither party disputes the existence of a valid contract, the doctrine of promissory estoppel does not apply, even when it is asserted in the alternative."  Ultrasound Imaging Corp., 2009 WL 3029763, at *10 (emphasis in original); and see American Casual Dining, 426 F. Supp. 2d at 1371 ("When neither

side disputes the existence of a valid contract, the doctrine of promissory estoppel does not apply, even when it is asserted in the alternative.").[10]

Plaintiff may plead in the alternative in this case because he disputes the validity of the Amendment to the Retention Agreement.  Plaintiff sought only to enforce the terms of the original Retention Agreement and contends that the Amendment is unenforceable, while Defendant relied on the modified Retention Agreement to dispute the breach of contract claim and contends that the original Retention Agreement does not constitute the agreement between the parties.  Additionally, this court has dismissed Plaintiff's breach of contract claim, and he will not be able to recover on that claim - no election of remedies is even required in this case.  Nat'l Elite Transportation, 2001 WL 2728408, at *4 ("If the contract provision at issue is

_____

[10]The district court in Nat'l Elite Transportation, LLC v. Angel Food Ministries, Inc., 2011 WL 2728408 (M.D. Ga. July 12, 2011), apparently would allow an alternative theory of recovery for promissory estoppel to a breach of contract claim even if the plaintiff seeks to enforce the contract and neither party disputes the terms of the contract.  The district court stated "that dismissing an equitable count at [an] early stage is not appropriate merely because [a claimant] is prohibited under Georgia law from recovering under a breach of contract theory and [an equitable theory]. . . . Though a plaintiff cannot recover under both legal and equitable claims at trial, he can certainly state claims under both theories in his complaint and later be required at trial to elect under which of these remedies [he] wishes to proceed."  Id., at *4 (quoting Manhattan Constr. Co. v. McArthur Elec., Inc., 2007 WL 295535, at *9 (N.D. Ga. January 30, 2007)) (internal quotation marks omitted).

27

ultimately deemed to be unenforceable, Plaintiff has the right to pursue a claim of promissory estoppel.").

At this stage of the proceedings, the court is only considering "the sufficiency of the complaint . . . and [is] not decid[ing] the merits of the case." Wein, 313 F. Supp. 2d at 1359.   The court finds "that the factual allegations in a complaint . . . 'possess enough heft' to set forth 'a plausible entitlement to relief'" for promissory estoppel. Stephens, 500 F.3d at 1282 (quoting Twombly, 127 S. Ct. at 1966-67).   For these reasons, the court **DENIES** Defendant's motion [Doc. 4] to dismiss Count Two of the Complaint.

### c.      Intentional and Negligent Misrepresentation, Count Three

Relying on the "merger clause" in the Retention Agreement which Plaintiff has sought to enforce, Defendant contends that Plaintiff cannot state a cause of action for intentional or negligent misrepresentation.  According to Defendant, the merger clause in the agreement forecloses Plaintiff's reliance on any representations or promises not found within the four corners of the Retention Agreement or the Amendment because Plaintiff has elected to enforce the contract.   [Doc. 4 at 16-20].   And Defendant contends that Plaintiff cannot prove a misrepresentation upon which he justifiably relied in connection with the Amendment.  [Id.].  Plaintiff responds arguing that there

28

is no merger clause in the Retention Agreement or the Amendment, that he can rely on misrepresentations allegedly made in connection with the Amendment, and that he is not seeking to enforce the Amendment.  Again, Plaintiff notes that he is only required at this stage of the proceedings to state a claim not prove entitlement to relief.  [Doc. 7 at 29-31, 34-41].  In the Complaint, Plaintiff's claim is based on the wording of the Amendment in which "Defendant stated that the Amendment was intended to clarify the circumstances under which 'Good Reason' could be invoked pursuant to section 6(c)(iii)" of the Retention Agreement and based on other representations of Defendant in regard to the Amendment.  The Complaint asserts that Defendant now contends that the Amendment limits the time period during which Plaintiff could receive severance benefits for one or more of the "Good Reason" causes listed in section 6(c) of the Retention Agreement.   Accordingly, Defendant intentionally or negligently misrepresented the purpose of the Amendment knowing that Plaintiff would rely on those misrepresentations.  [Complaint ¶¶ 33-43].  Plaintiff has stated a cause of action for intentional or negligent misrepresentation.

"Negligent misrepresentation is similar to fraud and requires the same elements of proof, the only difference being whether the defendant knowingly or negligently made the misrepresentation."  American Casual Dining, 426 F. Supp. 2d at 1365.  "A

29

claim for negligent misrepresentation requires proof that: (1) the defendant negligently supplied false information to foreseeable persons, known and unknown; (2) such persons reasonably relied upon that information; and (3) economic injury proximately resulted from that reliance."   Id. at 1365-66.   And intentional misrepresentation requires a plaintiff to plead that the defendant "has intentionally made a false statement." Lockett v. AllState Ins. Co., 364 F. Supp. 2d 1368, 1382 (M.D. Ga. 2005). However, "[a] party claiming he was fraudulently induced to enter a contract [based on misrepresentations] has two possible remedies:  (i) promptly rescind the contract after discovering the fraud and sue in tort for recovery of the contract's consideration (as well as other resulting damages); or (ii) affirm the contract and sue for damages resulting from the fraud." Lakeside Investments Group, Inc. v. Allen, 253 Ga. App. 448, 451, 559 S.E.2d 491, 494 (2002); and see Ouseley v. Foss, 188 Ga. App. 766, 768, 374 S.E.2d 534, 535 (1988) (same).  "If the party chooses the latter option and affirms the contract, however, he is bound by its terms, including the provisions of a merger clause." Allen, 153 Ga. App. at 451, 559 S.E.2d at 494; and see Ouseley, 188 Ga. App. at 768, 374 S.E.2d at 535 ("If the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract and the merger clause will prevent his recovery.").  This is the result because "[m]erger clauses

30

operate as disclaimers, and establish that the written agreement completely and comprehensively represents the arrangement between the parties." <u>Morris v. Progressive Health Rehabilitation LLC</u>, 2007 WL 908646, at *10 (M.D. Ga. March 22, 2007); <u>and see</u> <u>Authentic Architectural Millworks, Inc. v. SCM Group USA, Inc.</u>, 262 Ga. App. 826, 828, 586 S.E.2d 726, 729 (2003) ("'Stated another way, the entire agreement clause operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all of the parties' agreement.'") (citation omitted).

As noted, Plaintiff argues that, although he sought to enforce the original Retention Agreement, he is not seeking to enforce the Amendment and, in fact, argues that the Amendment is void. For this reason, he contends that he has rescinded the Amendment and may sue for misrepresentation. The problem with this argument is that Plaintiff, as he acknowledges, is seeking to enforce the original Retention Agreement and that is the contract in which the "merger clause" relied on by Defendant is found. If a merger clause is contained within the Retention Agreement, then Plaintiff would be bound by the terms of that merger clause and could not rely on representations not contained in the modified Retention Agreement. However, the

31

court finds that the Retention Agreement, either as originally agreed upon or as modified, does not contain a merger clause.

The clause that Defendant relies on states: "(c) <u>Amendments</u>. This Agreement may not be amended or modified otherwise than by a written agreement executed by the parties hereto or their respective successors and legal representatives." [Retention Agreement § 14(c)]. "In <u>First Data POS v. Willis</u>, 273 Ga. 792, 546 S.E.2d 781 (2001), [the Georgia] Supreme Court noted that the following language was a standard merger clause: 'The Agreement . . . constitutes the entire agreement between the parties with respect to the subject matter contained herein and supersedes all prior agreements and understandings, both oral and written by and between the parties hereto with respect to the subject matter hereof.'" <u>SCM Group</u>, 262 Ga. App. at 729-30, 586 S.E.2d at 829 (quoting <u>Willis</u>, 273 Ga. at 793, 546 S.E.2d at 783). The language in the clause relied on by Defendant is labeled "Amendments" not "Merger" or "Entire Agreement," <u>see</u> <u>Id.</u> at 730, 586 S.E.2d at 829, and only requires that amendments or modifications to the Retention Agreement be in writing but nowhere disavows reliance by Plaintiff on oral representations that might have been to Plaintiff concerning the meaning of the written terms of the Amendment. <u>See</u> <u>Morris</u>, 2007 WL 908646, at *10 (noting that merger clauses stated that the agreements "set forth the

32

entire agreement and understanding of the parties hereto and supersede any and all prior agreements, arrangements and understanding among the parties" or "contains the full and complete understanding of the parties hereto with regard to the subject matter contained herein") (citations and internal quotation marks omitted).  The clause, section 14(c), relied on by Defendant does not contain the language found in standard merger clauses and does not foreclose Plaintiff's reliance on alleged representations made by Defendant but not contained within the four corners of the contract.

Furthermore, to the extent that Plaintiff relies on alleged misrepresentations contained within the Retention Agreement or the Amendment, a merger clause would not foreclose Plaintiff's misrepresentation claim.  See Id., at *10 (the plaintiffs "may proceed on their fraud and negligent misrepresentation claims only if" the false promises and misrepresentations are contained within the written contracts); American Casual Dining, 426 F. Supp. 2d at 1368 (if the contract contains a merger clause, "a plaintiff cannot prove that [he] justifiably relied on alleged misrepresentations not contained within the contract"); SCM Group, 262 Ga. at 828, 586 S.E.2d at 729 ("Because the record shows that [the plaintiff] relied upon misrepresentations in the contract itself, no alleged merger clause can bar [the] fraud and misrepresentation

33

claims."). Plaintiff is relying in part on an alleged misrepresentation in the Amendment, that is, the recital which states:

> WHEREAS, the parties desire to enter into this Agreement to revise the terms of the Agreement to clarify the circumstances under which the Executive may terminate employment for 'Good Reason' (as defined in the Agreement) pursuant to Section 6(c)(iii) of the Agreement and to modify the terms of certain equity compensation awards.

[Complaint ¶ 35 (quoting Amendment)]. Although Plaintiff may not be able to rely on this recital to support his breach of contract claim, this court found no authority in Georgia law prohibiting Plaintiff from contending that this statement of the "parties['] desire" is a misrepresentation upon which he justifiably relied to his detriment when entering the Amendment to the Retention Agreement.

For the foregoing reasons, the court finds that Plaintiff has stated a cause of action for intentional or negligent misrepresentation and may proceed on that theory of recovery. See Erickson, 127 S. Ct. at 2200 (the pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"). Accordingly, the court **DENIES** Defendant's motion [Doc. 4] to dismiss Count Three of the complaint.

### d.    Attorney's Fees and Costs

Plaintiff seeks attorney's fees and costs under Georgia law, including, O.C.G.A. §§ 13-6-11, 13-1-11, and as provided for in the Retention Agreement. [Complaint ¶¶

34

44-46; Retention Agreement § 10].  Defendant opposes this relief with respect to the provision in the Retention Agreement arguing that Plaintiff is not the prevailing party and not entitled to payment of attorney's fees.  [Doc. 4 at 20-21].  Plaintiff opposes Defendant's motion contending that he is entitled to attorney's fees as provided for in the Retention Agreement.  [Doc. 7 at 41].  Because this court is dismissing the breach of contract claim and denying Plaintiff's motion for partial summary judgment on Count One, the breach of contract claim, Plaintiff is not entitled to attorney's fees pursuant to the Retention Agreement.  However, depending on the outcome of the remaining state law causes of action for promissory estoppel and misrepresentation, Plaintiff may be entitled to attorney's fees and costs under Georgia law.  For this reason, Defendant's motion [Doc. 4] to dismiss is **GRANTED** with respect to the request for fees pursuant to the Retention Agreement and **DENIED** with respect to the request for fees and costs under Georgia law.

## V.     Conclusion

For the foregoing reasons and cited authority, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion [Doc. 4] to dismiss as set forth *supra*; **DENIES** Plaintiff's motion [Doc. 6] for partial summary judgment; and **DENIES** as **MOOT** Defendant's Rule 56(d) motion [Doc. 12] for discovery.

35

Defendant's answer to remaining causes of action in the Complaint is due fourteen (14) days from entry of this order.  <u>See</u> Fed. R. Civ. P. 12(a)(4)(A).

**SO ORDERED THIS** 16th day of December, 2014.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

36